WALTER S. HENNIG, PLAINTIFF, v. MARSHALL J. BOOTH AND THE RED STAR TRANSPORTATION COMPANY, A CORPORATION, DEFENDANTS.

ALFRED K. NAUGLE, PLAINTIFF, v. MARSHALL J. BOOTH AND THE RED STAR TRANSPORTATION COMPANY, A CORPORATION, DEFENDANTS.

Submitted October term, 1925—Decided March 4, 1926.

**Negligence—Motor Vehicle Collision—Injury to Passengers in Defendant's Car, in Which He Too was Riding—Defendant Had Neglected to Repair Accelerator He Knew was Not Working Properly—One of the Plaintiffs was Driving at Time of Accident, and in His Effort to Operate the Accelerator the Collision Occurred—Held, That There was no Contributory Negligence on Plaintiff's Part.**

On applications for rules to show cause why plaintiffs' verdicts should not be set aside.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the defendant Marshall J. Booth, *Kalisch & Kalisch* (*Samuel Kalisch, Jr.,* on the brief).

For the plaintiffs, *Peter Bentley* (*Herbert C. Gilson,* of counsel).

PER CURIAM.

These cases were tried together at the Union County Circuit, resulting in verdicts of $6,000 for the plaintiff Walter S. Hennig and $20,000 for the plaintiff Alfred K. Naugle, both judgments being against the defendant Marshall J. Booth alone. There was no service of summons and com plaints on the defendant the Red Star Transportation Company. Herein Booth will be referred to as the defendant.

Applications were made to the trial judge for rules to show cause why new trials should not be granted and were

refused, and now applications are made to this court therefor.

We think that the plaintiffs established at the trial by satisfactory evidence that, in the fall of 1923, defendant purchased a Studebaker seven-passenger sedan, the accelerator rod of which was out of alignment; that defendant was warned of the defective condition by a mechanic at least twice, and that to use the car until repairs were made was dangerous that "it" (the accelerator rod) "should be attended to; it wasn't safe to drive it that way;" that defendant, knowing the defective condition of the accelerator rod, invited the plaintiffs to accompany him in his car on a ride to Wilkes-Barre, Pennsylvania, on November 9th, 1923; that on that very day defendant drove to the mechanic who had given him warning of the condition of the accelerator rod and had the mechanic change some of the tires on the car; that there was a further discussion about the accelerator *sticking,* defendant saying, "It had *stuck* again, but he didn't have time to do it that day" (meaning to have the accelerator repaired) ; that defendant was then warned by the mechanic that "it" (the accelerator) "should be attended to; it wasn't safe to drive it that way," to which defendant replied that "he would have it fixed when he came back," "he said he was in a hurry; that without either plaintiff knowing of the condition of the accelerator they started on their trip; that plaintiff Hennig relieved defendant (at defendant's request) of the wheel, and was coming to a steep hill; to give the car momentum to carry the car over the steep hill, Hennig did what one has to, pressed the accelerator down; that as the crest of the hill was reached, to reduce the flow of gas into the cylinders and reduce the speed of the car, Hennig raised his foot from the accelerator when the accelerator *stuck* and the car bounded forward at a great rate of speed, increasing at an incalculable rate; that plaintiff Hennig, much excited, looked for the trouble and saw it was the accelerator that was stuck, and leaned down and pulled up the accelerator that was stuck and the speed of the car began to diminish immediately; that at this moment

Hennig was highly excited, and, after releasing the accelerator and thereby cutting the flow of gas, Hennig raised up and saw another car coming right for him and the cars came into violent collision; that although the collision occurred on the right-hand side of the road, as defendant's car was proceeding, plaintiff drew the other car over that side, because he, in leaning down to release the accelerator, had swerved his car to the left and the other car to pass had pulled to its left, and then Hennig suddenly pulled over to his own (the right-hand) side of the road, and the collision then occurred; that the plaintiff Naugle had nothing to do with the control of the car; he was riding in the rear seat; that the three occupants of the car were injured; that on three separate occasions defendant admitted that the collision was his fault and due to the defective accelerator rod.

There were two witnesses sworn for the defense. One was the defendant and the other Dr. Livengood, a medical expert. Defendant does not deny a single statement made by any of the plaintiffs' witnesses, with the exception that Hennig started to drive sooner than Hennig had described.

It seems clear that the negligence of the defendant in not having the accelerator repaired was the proximate and efficient cause of the accident. It seems also clear that the jury properly found that Hennig was not guilty of contributing negligence or assumption of risk. Had the accelerator not stuck the plaintiff Hennig would not have had his attention diverted from the car and it journey. It seems to us that he did what he thought was best, and having been placed in a position of peril by the act of the defendant, contributory negligence cannot be imputed to him, because, possibly, he did not select the very wisest course, or, possibly, made an honest mistake of judgment in such an emergency as he described, and has not been denied by defendant or any witness for him. Some stress is laid on a certain written statement of defendant as to how the accident happened and which was subscribed to by Naugle, but Naugle said in signing the paper he took Booth's version of it because (being resting and not looking at the time) he had not seen

the accident, and, moreover, at the time he subscribed to it, he was suffering pain from his most serious injuries. The jury believed Naugle, and, we think, rightly, considering all the evidence. We think it clear that a nonsuit was properly refused and a direction of a verdict was rightly denied, and that the verdict of the jury was not against the weight of the evidence nor contrary to law.

We can find no fault in the refusal of requests to charge. There was no request number eleven. Request number nine was charged.

The court had already charged the third request in substance and effect.

We find no fault with the instruction that the Red Star Transportation Company, while named in the papers as a defendant, was not a defendant before the jury.

With respect to the next point, it is sufficient to say that no request was made that the defendant's version of how the accident occurred should be charged.

We find no fault with the admission of the question asked of the plaintiff Naugle over the objection of the defendant.

With respect to the argument that the verdicts are excessive, it is sufficient to say that our examination of the testimony shows that both plaintiffs were injured permanently and very seriously, the plaintiff Naugle especially so; both had expended large sums for medical, surgical and hospital attendance, and it is quite manifest to us that no court could possibly say that either verdict was excessive.

Both applications for rules to show cause will be denied, with costs.