COCONOWER *v.* STODDARD.

[No. 14,365. Filed September 30, 1932. Rehearing denied December 16, 1932. Transfer denied March 29, 1933.]

*Glen D. Peters, Bomberger, Peters & Morthland* and *Parker, Crabill, Crumpacker & May,* for appellant.

*Dudley M. Shivley* and *Walter R. Arnold,* for appellee.

BRIDWELL, J.—Appellee, as administrator of the estate of Raymond Stoddard, a minor, brought this action against appellant, to recover damages for the death of said Stoddard, alleged to have been caused by reason of appellant's operation of an automobile, in which decedent was riding as a guest, in a reckless, wanton and grossly negligent manner,

The issues were closed by an answer of general denial to the complaint. Trial by jury resulted in a verdict for appellee in the sum of $3,000, upon which judgment was rendered. Motion for new trial was filed and overruled to which action of the court appellant excepted and perfected this appeal, assigning as error the overruling of his motion for a new trial.

In the motion for a new trial right to the same is asserted upon the following grounds: That the damages assessed by the jury are excessive; that the verdict is not sustained by sufficient evidence; that the verdict is con-

trary to law; that the court erred in refusing a written tendered instruction at the close of plaintiff's evidence, to direct a verdict for the defendant; that the court erred in giving to the jury each of the instructions given, and erred in refusing to give to the jury each of the instructions tendered by the defendant.

The evidence proves the following facts: The accident occurred at approximately four o'clock A. M. on the 8th day of June, 1930, while the decedent was riding in an automobile owned and operated by appellant, as the guest of appellant, and without payment for his transportation; the decedent and appellant left Osceola in said automobile about one-thirty o'clock, A. M. and drove to Mishawaka where they had something to eat, and then drove to Wakarusa, where they turned around and came back towards home; decedent was seated to the right of appellant (who was driving the car), and no one else was with them; the decedent, Stoddard, was asleep at the time of the accident and had been asleep ever since they had left Wakarusa which was about six miles from the scene of the accident; appellant was driving over a paved road and about 300 yards east of where the accident happened there was a turn or jog in the road which he made at a rate of speed of 30 or 35 miles an hour; after making this turn appellant observed a row of trees near the highway, then an open spot, he then went to sleep and the next he remembered the automobile was in the ditch and he awakened just before it hit a tree which stood about eight feet from the berm of the highway over which they were traveling, and approximately 300 feet west from the "jog" in the road; when appellant awakened he saw a tree within "five or ten feet" and couldn't miss it; as a result of the accident the decedent was fatally injured and died the next day. The accident occurred on a Sunday morning and appellant had not slept since the night of the 7th. He had arisen about 7:30 or 8:00

o'clock Saturday morning, and worked until seven o'clock, P. M. on that day; he had not fallen asleep before the time when he dozed off after making the turn in the highway. Appellant's evidence is that he had on prior occasions driven all night without going to sleep and that he had no feeling or warning that he was going to sleep on this occasion, although he might have been sleepy. There is also evidence that the deceased was an emancipated minor, 20 years old, and in good health; that he was earning $18 a week; that his parents were both living and each had an expectancy of life of approximately 21 years; that the deceased, from the time of his emancipation until his death, lived with his parents and contributed about ten dollars a week towards the upkeep of the family of which he was a member.

The complaint alleges and the evidence proves that at the time of the accident causing the injury and subsequent death of Raymond Stoddard, he was riding in an automobile operated by appellant, as appellant's guest. This being true appellee's right to recover is affected and limited by the provisions of Chapter 201 of the Acts of the General Assembly of 1929 (Acts 1929, p. 679. Burns' Supp. 1929, Sections 10142.1, 10142.2), which is entitled: "An act *releasing* owners and operators of motor vehicles from liability for injuries to passengers who are transported as guests." Section one of the act (being the only section applicable to the instant case), reads as follows: "That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator, for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his reckless disregard of the rights of others."

We must assume that the Legislature when it undertook to legislate upon the subject matter did so with the

purpose of making some change in the existing law. The title to this act clearly indicates that such was its intention, and the language used in section one limits liability to two classes of cases: (1) When such accident shall have been intentional on the part of the owner or operator; (2) when it was caused by his reckless disregard of the rights of others.

In the instant case it is not contended that the accident was caused intentionally, and the evidence would not justify such a conclusion. Appellant went to sleep while operating the car, but from his testimony, and his is the only evidence in the record concerning the matter, he had no warning, or feeling that he would do so, although he stated he might have been sleepy. That he did operate the car while asleep is conclusively proven by the fact that he did go to sleep for a very brief period of time, thus relinquishing control of the vehicle he was driving and making it possible and probable that an accident would follow. Was this conduct on the part of appellant merely negligence, or was it a reckless disregard of the rights of others in the meaning of the statute heretofore quoted?

Instruction four given by the court to the jury quotes the statute and proceeds as follows: "You are instructed that by the phrase 'reckless disregard of the rights of others' is meant not only the conscious invasion of the rights of another in a reckless manner but likewise the acts or omissions of a wrongdoer are brought within the meaning of this phrase although he does not actually realize that he is invading the rights of another, provided the act is committed or a duty is omitted under such circumstances that a person of ordinary prudence would say that it was a reckless disregard of another's rights."

In instruction five the jury was informed that: "By the phrase 'reckless disregard of the rights of others' is meant the commission of an act or the omission of a duty

under such circumstances that its reasonable and natural consequence would be to produce injury to others; the person committing such act or omitting such duty, having knowledge that such commission of an act or omission of said duty would, as a reasonable and natural consequence, produce such injury."

Connecticut has a statute very similar to our own, the only difference in phraseology being that it reads "unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others," while our statute does not contain the phrase "or caused by his heedlessness." See Chapter 308 of the Public Acts of Connecticut of 1927.

In construing this statute the Supreme Court of Errors of Connecticut, in the case of *Silver* v. *Silver* (1928), 108 Conn. 371, 143 Atl. 240, 242, 65 A. L. R. 943, held that "the word 'heedlessness' signifies a failure to take heed and is a synonym of carelessness. Standing by itself it connotes a lack of care substantially identical with that indicated by the word 'negligence.'" The court further held, however, that the question for consideration, was not the meaning of a single word in an abstract sense, but its meaning with due regard to its context and the meaning of the entire phrase or sentence in which it appears. Continuing, the court said: "If the phrase 'or caused by his heedlessness' is to be taken as strictly disjunctive as by itself constituting an exception to the general rule of nonliability, and 'heedlessness' is held to be synonymous with 'negligence,' the entire statute is nugatory and effects no change whatever in the law as it existed before its enactment. We do not think that is a sensible construction of the statute. It would utterly fail to effectuate the obvious purpose of the Legislature in some way to limit the liability of the owner or operator of a motor vehicle to one who was riding in it as his guest.

The language of the statute indicates an intention to limit such liability to two classes of cases: First, when the accident was caused by intentional misconduct; and, second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence." See also *Grant* v. *MacLelland* (1929), 109 Conn. 517, 147 Atl. 138; *Bordonaro* v. *Senk* (1929), 109 Conn. 428, 147 Atl. 136; *Ascher* v. *H. E. Friedman, Inc.* (1929), 110 Conn. 1, 147 Atl. 263, 264.

In *Grant* v. *MacLelland, supra,* the court, in considering the statute involved, said: "The limitation of the guest to the maintenance of these two specified causes of action excludes by necessary implication a right of action for negligence." And in *Asher* v. *H. E. Friedman, Inc., supra,* the court expresses itself as follows: "Conduct indicating a reckless disregard of the rights of others is quite distinct in its characteristics from merely negligent conduct. It is conduct which indicates an indifference to the consequences of action and constitutes wanton misconduct. (Citing authorities.) Conduct arising from momentary thoughtlessness, inadvertence, or from an error of judgment, does not indicate a reckless disregard of the rights of others."

In Iowa the guest statute holds the owner or operator of a motor vehicle liable where damage results "because of the reckless operation by him of such motor vehicle." Chapter 119, Code of 1927, Section 5026-b1. Considering this statute the Supreme Court of Iowa, in the case of *Siesseger* v. *Puth* (1931), (Iowa), 239 N. W. 46, said: "It is apparent, we think, that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'willfulness' or 'wantonness,' but if the conduct

is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.'

"This necessarily follows in the statute under consideration from the fact that the primary purpose of the statute is to relieve the host from liability for injury to his guest, resulting from negligence. The statute exempts the host from liability for 'negligence' as ordinarily defined, but holds him liable under two specific exceptions.

"As recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading, proof, or instruction of the court, in cases brought under this statute.

"In cases brought under this statute, the jury is not to be permitted to determine whether the defendant did what an ordinarily prudent person would not have done under the circumstances, or failed to do what a person of ordinary prudence would have done under the circumstances. To recover, the plaintiff must allege and prove, more than that. If the facts are not in conflict, it is for the court to determine whether the defendant has been proven 'reckless' in his operation of the automobile. If the facts are in dispute, necessarily they must be submitted to the fact finding body, under definite instructions as to what constitutes 'reckless operation.' "

In *Kaplan* v. *Kaplan* (1931), (Iowa), 239 N. W. 682, 684, the Supreme Court had before it for decision a case much like the case at bar. In that case a father invited his daughter to accompany him on a visit to relatives. The invitation was accepted and the journey made by automobile. On the return trip while the father was driving he went to sleep and both were injured in the accident which followed. At the time of the accident the daughter

was riding in the back seat of the car, and was asleep. Upon the trial of an action for damages brought by the daughter against the father the lower court, on motion of the defendant, directed a verdict for the defendant. The second ground of the motion was "that the defendant, as a matter of law, was not guilty of recklessness within the meaning of the statute." In the course of its opinion the court said: "We now proceed to a consideration of the second ground of said motion. Would the court be justified in permitting a jury to find from the evidence as hereinbefore set out that the defendant father was guilty of recklessness within the meaning of the law? We answer in the negative. . . . The fact that the father permitted sleep to overcome him and drove the car while asleep is the only proposition argued by the parties as the cause of the accident. There is no evidence of any other cause. Can it be said that a person, while driving along the highway who is invoulntarily overcome by sleep is guilty of reckless operation of the automobile within the meaning of the law? We think not." The court further says: "But the appellant argues that the father was reckless for going to sleep or permitting himself to be overcome by sleep. While he may have been negligent, this does not constitute recklessness within the meaning of the statute. . . . The fact that he was tired and facing the east sun and went to sleep cannot and does not raise any negligence there may have been in said act to the level of recklessness. His unconscious conduct while asleep, or semiconscious conduct while going to sleep, or the mere fact that he permitted sleep to overcome him, do not evince a heedless disregard of the rights of the daughter."

At the time of the enactment of the statute we are called upon to construe, the law of this state gave to a guest in any conveyance, who was injured by the negligence of the owner or operator of such conveyance, a

cause of action. The duty owed to such guest was the observance of ordinary care, and the neglect or violation of this duty was negligent conduct. In this jurisdiction, however, negligence is not classified, and the rule obtaining in some jurisdictions that there may be degrees in negligence has long ago been discarded in this state. *Bedford, etc., R. Co.* v. *Rainbolt* (1885), 99 Ind. 551; *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171.

We are of the opinion that it was the intent of the Legislature, when it enacted our guest statute, to relieve and release the owner or operator of a motor vehicle from liability for damages sustained by a guest and caused by an accident brought about by negligence, as negligence was defined by our existing law when the statute was passed. To hold otherwise would be to hold that a needless and useless statute was enacted; that our Legislature first relieved the operator of liability for negligence and then by the use of the language "or caused by his reckless disregard of the rights of others" held him liable for negligence.

Liability of the owner or operator of a motor vehicle to a guest, since the passage of the statute in question, exists only in two classes of cases: First, where the accident resulting in injury was intentionally caused; and, second, where the accident was caused by a reckless disregard of the rights of others, meaning thereby not to relieve from liability where caused when the owner or operator voluntarily does an improper or wrongful act, or, with knowledge of existing conditions voluntarily refrains from doing a proper and prudent act, under circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he

recklessly takes the chance of an accident happening without intent that any occur.

We have heretofore given a summary of the evidence. Appellant's testimony is the only evidence in the record as to his going to sleep. On direct examination by appellee, appellant testified concerning his having made a turn in the road and his examination proceeded as follows: "Q. And you made that turn all right, didn't you? A. Yes sir. Q. What happened after that turn was made? A. Well, as far as I remember, I remember seeing a row of trees; there was a row of trees, that is all I remember seeing was a row of trees, then there was an open spot; next I remember was in the ditch and I seen this tree. Q. You don't remember coming up to the tree you hit? A. No.. Q. All you remember is after you made the turn you saw a row of trees and the next thing the crash? A. Well, I waked up just before I hit the tree. Q. You were awake when you hit the tree? A. Yes, just a short distance; I couldn't miss it. Q. About how far were you away from the tree when you woke up? A. I don't really know; I just woke up and seen the tree. Q. How far would you judge? A. Five or ten feet."

The cross-examination on this subject was as follows: "Q. How long have you been driving automobiles? A. Five years. Q. Had you ever driven all night before? A. Yes sir. Q. Did you ever go to sleep before driving an automobile? A. No sir, I never went to sleep before. Q. While you were driving along, do you recollect of going around this 'S' curve close to the scene of the accident? A. Yes, I remember going around that. Q. Did you have any warning or any thought that you were going to go to sleep? A. No, I did not. Q. Were you talking with Raymond, or not? A. Well, right at the time he was asleep. Q. How long had he been asleep? A. Ever since we left Wakarusa."

On re-direct examination: "Q. When did you first

become aware that Raymond was asleep, where were you when you first observed that Raymond was asleep? A. When we was leaving Wakarusa, I noticed he wasn't saying anything, he was asleep. Q. Had you already got out of the town limits? A. Yes, at the outskirts. Q. You observed his sleeping there, leaning over against the side of the seat? A. Yes. Q. You didn't disturb him?· A. No. Q. You were feeling pretty sleepy at that time? A. Yes, I might have been sleepy. Q. You hadn't had any sleep since the night of the 7th, had you? A. No, I had not. Q. And you had worked all day the 7th? A. Yes. Q. Then you started out about nine o'clock at night, you had not slept from the morning of the 7th up to this time, had you? A. No. Q. What time in the morning did you get up on the 7th? A. Well, I imagine 7:30. . . . Q. When did you first fall asleep that night, that morning I should say? A. It never bothered me until he went to sleep, when he was asleep; you know when you are riding with somebody asleep, it naturally would make yourself sleepy. Q. You didn't make any effort to arouse him? A. No, I just thought I would let him sleep, I was going to go home. Q. You wanted to let him sleep? A. Yes."

On re-cross examination: "Q. How far were you from home where the accident occurred? A. About two miles. Q. Did you have any feeling you were going to sleep? A. No, I did not. Q. Any warning that you were going to go to sleep? A. No. Q. Had you ever· gone to sleep driving a car before? A. No sir."

The probative effect of the foregoing evidence must be tested by the standard fixed by the statute. Both negligence and contributory negligence are eliminated ██ by our statute as elements for consideration in actions of this character. While the questions as to whether the accident was intentionally caused, or caused by the reckless disregard of the rights of others,

should be left to a jury in all cases where there is any conflict in the evidence, or where different inferences from the testimony given might be reasonably drawn, yet the case should be submitted under instructions which clearly and succinctly inform the jury that there must be something more than negligent conduct to justify recovery.

In the instant case, on the trial of the cause, court and counsel seem to have proceeded upon the erroneous theory that negligence and contributory negligence were in issue. By its instruction six the court instructed the jury "that the plaintiff is not entitled to recover in this case if the plaintiff's decedent was guilty of negligence at the time of the accident that contributed to his injuries and death," etc.; appellant by his tendered instructions two and three requested of the court that it instruct the jury as to the law relative to contributory negligence; appellee in his complaint charges, among other things, that appellant operated the automobile "in a *grossly negligent* and wanton manner," and the court did not by any instruction inform the jury, in effect, that where a right to recover damages for an injury caused by an accident occasioned by a "reckless disregard of the rights of others" is claimed, that it is necessary that more be proven than a failure to exercise ordinary care.

We are of the opinion that instructions four and five given by the court and heretofore set out, failed to fully and correctly instruct the jury as to the meaning of the phrase "reckless disregard of the rights of others" as used in the statute, and as heretofore defined in this opinion. From these instructions (the only ones given relating to the meaning of the phrase) and instruction six on contributory negligence, the jury might reasonably have concluded that liability existed if nothing more than negligence was proven.

The motion for a new trial should have been sustained,

and having reached that conclusion we deem it unnecessary to extend this opinion by a discussion of other claimed errors alleged in said motion, as the other questions presented will not necessarily arise upon any retrial of the cause.

Judgment reversed with instructions to sustain the motion for a new trial.