FLY v. SWINK (two cases).—69 S. W. (2d) 902.

Western Section. December 20, 1933.

Petition for Certiorari denied by Supreme Court, March 31, 1934.

Armstrong, McCadden & Allen and Emmett W. Braden, all of Memphis, for plaintiff in error.

Bryan & Maxwell, of Memphis, for defendants in error.

KETCHUM, J.  These are two suits tried together.  In the first or main case, Mrs. Swink sued Mrs. Fly for damages for personal injuries sustained in an automobile accident near Temple, Texas, while a guest in Mrs. Fly's automobile.  The other suit is by the husband, Mr. Swink, for loss of his wife's services, and medical and hospital fees.

There was a verdict of $4,000 for Mrs. Swink, and $1,000 for Mr. Swink.  The circuit judge suggested a remittitur of $1,500 in the former case and one of $500 in the latter, and judgments were entered accordingly.  The defendant prosecuted this appeal in the nature of a writ of error.  The only error assigned here is the action of the circuit judge in denying her motion for a directed verdict.

In addition to the usual defenses, the defendant pleaded the Texas automobile guest statute (Vernon's Ann. Civ. St., art. 6701b, sec. 1), which provides that:

"No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

The material facts are as follows:

Mrs. Swink, who was related to Mrs. Fly by marriage, was invited by her to go with her as a guest in her automobile on a visit to relatives in San Antonio, Texas.  They left Memphis in Mrs. Fly's Cadillac Imperial sedan on the morning of December 5, 1931.  Mrs.

Swink, Mrs. Fly and Mrs. Fly's three-year-old granddaughter rode on the back seat. The car was driven by Mrs. Fly's colored chauffeur, Louis Becton; and a colored maid, Mary Clark, rode on the front seat with the chauffeur.

The accident occurred on Monday morning, December 7th, at about 9:30 o'clock, at a bridge near Berry's filling station on State Highway No. 81, about four miles north of Temple, Texas. The road was a Tarvia road, practically straight and level at this point; the road was in good condition, but was wet as the result of a drizzling rain.

Approximately 800 feet north of the bridge there was a highway sign "Narrow Bridge." At just about this point the defendant's car passed another car driven by J. E. Temple, which was going in the same direction at a speed of about 45 miles per hour.

The bridge was 15 feet, 2 inches, wide, 32 feet long, and there was a concrete wall 18 inches high on each side. The bridge is 8 feet narrower than the paved highway. There was a wire netting nailed to 4-inch posts, making the approaches to the bridge. This wire fence makes a funnel-shaped approach to the bridge.

After the defendant's car passed the Temple car, it pulled back to the right-hand side of the highway; and as the driver approached the bridge, he observed a car coming from the opposite direction, and believing that there was not sufficient room for the two cars to pass on the bridge, he turned to the right, and ran into the wire fence and the concrete abutment or side wall of the bridge; the force of the blow broke off about 6 feet of the wall and the automobile went over into the ditch about 10 or 12 feet below; three 4-inch posts to which the wire netting was fastened were also knocked or pulled down. As the result of this fall of the automobile, Mrs. Swink received the injuries complained of.

The witnesses fix the speed of the car at about 50 to 55 miles per hour at the time of the accident. Temple says he was driving 45 miles per hour when the Cadillac passed him. The road was wet, but there is no evidence that the car skidded. The witness Temple, who was the only eyewitness, in answer to a question whether there was any sliding or skidding by any of the cars there, answered:

"No, the Cadillac didn't skid into the bridge; it just drove right straight into the bridge; was just too far to the right."

Mrs. Swink, in answer to the question, "Did the car slide into it (the abutment), or how did it hit it?" replied: "It just went right into it." And she testified that "it just seemed to hesitate, and then went on over." A "sudden lurch" of the car first attracted her attention, and she instantly realized that "something was about to happen," and she cried out, "O! Louis, Louis," and tried to catch to something in the car; and then her head struck the windshield between the front and back seats.

In the two days driving after they left Memphis, Mrs. Swink had found no fault with, and had offered no criticism of, the chauffeur's driving.

The Texas "guest" statute was duly proved, as pleaded, as was also the statute fixing the maximum speed limit on Texas highways at 45 miles per hour.

Mrs. Swink died after rendition of the verdict in her case, and the cause was duly revived in the name of her husband as her administrator; and since the cases have been pending in this court the said R. B. Swink has died, and both cases have been revived in the name of Blan R. Maxwell, administrator.

The only question on this appeal is whether the trial judge should have sustained the defendant's motion for a directed verdict. In passing upon that motion it was his duty to consider the evidence in its most favorable aspect for the plaintiff, taking into account every favorable inference that might legitimately be drawn from it; and if there was any dispute as to any material evidence, or any legal doubt, as to the conclusion to be drawn from the whole evidence, then it was his duty to deny the motion, and submit the case to the jury. Tyrus v. Railroad, 114 Tenn., 579, 86 S. W., 1074; Brenizer v. N., C. & St. L. Ry., 156 Tenn., 483, 3 S. W. (2d), 1053, 8 S. W. (2d), 1099. And in the foregoing statement of the facts we have, therefore, stated the case as strongly in favor of the plaintiff's theory or contention as the evidence warranted.

At the outset it must be conceded that the defendant's chauffeur was guilty of negligence; there is evidence that he was operating the automobile at a rate of speed in excess of 45 miles per hour, which is the maximum speed limit on the highways in the state of Texas; this was negligence per se; and irrespective of the statute it must be conceded that he was guilty of negligence in running at such a rate of speed on a road with which he was not familiar, and in not keeping a proper lookout ahead. The mere fact that he ran into the wire netting and the abutment of the bridge is proof that he was negligent either in not keeping a proper lookout ahead, or that he did not have his car under proper control.

But liability here is not predicated upon ordinary negligence; under the Texas guest statute which is controlling, the defendant is not liable unless (1) the accident was caused by the intentional act of the owner or operator of the automobile, or (2) unless it was caused by his heedlessness or his reckless disregard of the rights of others.

It is not, and of course cannot be, claimed on this record that this accident was caused by the intentional act of the chauffeur, and the judgment for the plaintiff must be supported, if at all, upon the evidence that her injuries were the proximate result of such

conduct of the chauffeur, as could properly be characterized as heedless and in reckless disregard of the safety of the plaintiff and the other passengers in the car. This is, of course, a greater degree of negligence than is required to be proven in ordinary negligence cases.

The Texas guest statute (Vernon's Ann. Civ. St., art. 6701b) has not been construed in any Texas case. This statute, however, is a copy of the Connecticut statute (Gen. St. Conn. 1930, sec. 1628) which has served as a model, both as to form and as to the interpretation given it, for subsequent legislation in other states.

In the leading case in Connecticut, Silver v. Silver, 108 Conn., 371, 143 A., 240, 242, 65 A. L. R., 943; Id., 280 U. S., 117, 50 S. Ct., 57, 74 L. Ed., 221, 65. A. L. R., 939 and 943, the constitutionality of this statute was upheld. In that case the defendant was driving his car in congested traffic at a speed of 15 to 20 miles per hour; his son, on the rear seat, called to him to look at some horses which were· being ridden on a vacant lot on the side of the road; and while his attention was so diverted for the moment, he ran into a car which had been proceeding about 15 feet ahead of him, as a result of which the plaintiff, who was a guest in the car, received the injuries complained of. The trial court directed a verdict for the defendant, and this was upheld, the court saying:

"The language of the statute indicates an intention to limit such liability to two classes of cases: First, when the accident was caused by intentional misconduct; and, second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence."

In Ascher v. H. E. Friedman, Inc., 110 Conn., 1, 147 A., 263, 264, the plaintiff was a guest in a car driven by her sister; they had taken their families, including two children of the plaintiff, and three of her sister's children for a picnic; while they were having their picnic lunch, it suddenly grew dark and threatened a thunderstorm. The driver of the car was extremely nervous in a thunderstorm. They hastily put everything in the car and started for home. As they were approaching the house, they were proceeding at a rate of 25 to 30 miles per hour; the plaintiff protested that they were going too fast, but the driver paid no attention. The house was upon the left-hand side of the street with a driveway into the yard. The driver was proceeding to the left of the center of the street, and started to enter the driveway without slackening her speed. The right wheels of the car mounted the curb to the right of the entrance, and in an endeavor to correct her course, the driver swung too far to the left, ploughed through a flower bed, and crashed into a bay window of the house about 25 feet from the curb.

The trial court set aside a verdict in favor of the plaintiff on the ground that her case, taken in its most favorable aspect, disclosed nothing more than a case of ordinary negligence on the part of the driver of the car. This judgment was sustained. The court say:

"The facts, as to which there was no serious dispute, disclose a typical case of negligence, the failure to exercise the care of a reasonably prudent person, for which there can be no recovery in an action by a guest. Conduct indicating a reckless disregard of the rights of others is quite distinct in its characteristics from merely negligent conduct. It is conduct which indicates an indifference to the consequences of action and constitutes wanton misconduct. Menzie v. Kalmonowitz, 107 Conn., 197, 199, 139 A., 698; Bordonaro v. Senk [109 Conn., 428, 147 A., 136], supra.

"Conduct arising from momentary thoughtlessness, inadvertence, or from an error of judgment, does not indicate a reckless disregard of the rights of others. . . . The accident was the result of a momentary bit of careless driving, a failure to exercise due care. There was nothing in the conduct of the defendant to indicate that she was operating the car with reckless disregard of the rights or safety of her own children and of her sister (and her children) who were riding with her. There was no justification for the verdict of the jury in favor of the plaintiff, and the court performed its clear duty in setting it aside."

In Anderson v. Colucci, 116 Conn., 67, 163 A., 610, 612, the plaintiff was a guest in an automobile owned and driven by Colucci's intestate. The driver was operating the car along the Boston Post road, and collided with a wrecking truck coming from the opposite direction, which was turning across the road. The owner of the wrecking truck and Colucci's intestate were both sued. The trial judge directed a verdict for both defendants. It was held that this was correct as to Colucci's administrator, but that the case against the owner of the wrecking company should have been submitted to the jury.

In this case the court found that Colucci's administrator "was driving on a smooth concrete road 36 feet wide, well lighted and straight; that there was, just at that time, very little traffic; that he had brilliant headlights which should have shown him this truck in front of him at least as soon as he came within the range required of his lights by law, viz., two hundred feet; . . . that no marks on the roadway showed that he had applied his brakes, or that to avoid the collision he swerved from the second lane in which he was proceeding. To drive into this truck under these circumstances would, without explanation, justify the jury in reaching a conclusion that he was negligent, particularly if the jury believed the statement of an eyewitness that the car was being driven at a 'terrific' speed. While this adjective may have little probative

value in fixing the miles per hour, it surely connotes immoderate as distinguished from moderate speed under the circumstances, and this is further supported by the fact of the smashing of his motor and the complete demolition of his car, and by the further testimony that the heavy truck was turned about, its body knocked loose and pushed out of place, and other damage done to it.''

After stating that these facts made out a case of negligence of the driver of the car, the court say:

''But it was necessary to make out a prima facie case of something more than negligence in order to obtain a verdict against this defendant (the driver of the host's car). Since the plaintiff had the legal status of a guest in this car, it was necessary for him to show prima facie that the intestate's conduct was in heedless and reckless disregard of the plaintiff's rights. There is no evidence and no permissible inference that this driver knowingly assumed a risk or was aware of danger, Potz v. Williams, 113 Conn., 278, 281, 155 A., 211, or that he was warned or requested to do anything different from what he did, Berman v. Berman, 110 Conn., 169, 170, 147 A., 568, Meyer v. Hart, 110 Conn., 244, 245, 147 A., 678, or that he was guilty of more than thoughtlessness, inadvertence, or an error of judgment, Upson v. General Baking Co., 113 Conn., 787, 789, 156 A., 858, Schepp v. Trotter, 115 Conn., 183, 185, 160 A., 869, or anything to justify an inference that he was indifferent to the consequences which might result to his passengers from his conduct, Ascher v. H. E. Friedman, Inc., 110 Conn., 1, 3, 147 A., 263. In short, there is no evidence or permissible inference that he was guilty of wanton or willful misconduct. Bordonaro v. Senk, 109 Conn., 428, 431, 147 A., 136, Grant v. MacLelland, 109 Conn., 517, 520, 521, 147 A., 138.''

In the recent case of Latham v. Hankey, 117 Conn., 5, 166 A., 400, 401, decided May 23, 1933, the facts were that plaintiff's decedent, Latham, was seated at the right of defendant's decedent, Merrill, in an automobile driven by Merrill, on the Boston Post road, on the evening of November 10, 1921; the night was clear and the roadway dry, and it was familiar to Merrill who had driven over it often. At some time before 10:15 o'clock, the car, on a steep downgrade, approached a curve in the roadway to the left, commonly known as Dead Man's Curve, in the town of Old Lyme. About 200 feet before the curve begins was a highway sign indicating there was a curve ahead; a second sign directed drivers to keep to the right, and another indicated proper speed. About 60 feet before the curve began, brake marks well within the right edge of the concrete were found after the accident which continued for 10 feet, and then skid marks led off the concrete onto the shoulder of the road. At this point the shoulder was about 6 feet wide, and the concrete roadway was 24½ feet. After leaving the concrete the

tire marks continued on the shoulder for 50 feet to the end of a highway fence, and the fence was demolished from that point for about 57 feet; then the tire marks turned sharply to the right over an embankment and across an abandoned roadway to the rear wheels of the Merrill car, which stood upright at this spot.

The dead body of Merrill was found in the driver's seat and the body of Latham sitting beside him. The right front tire was off, but neither that nor the other tires were deflated; the right front and side of the car was damaged. A long plank which had been a part of the highway fence had entered the windshield, striking Latham in the neck, severing his head which was found in the tonneau, and the plank protruded from the rear of the car. Another plank had penetrated the windshield and passed over the shoulder of Merrill, pinning his head and body to the door by his side. The death of Latham was clearly the result of his being struck by the plank, but the record furnishes no evidence whatever as to whether there was any observable physical injury to Merrill. It is purely conjectural whether his death was caused by the shock of the collision with the fence, or the pressure of the plank which was found resting against his body and head, or whether death came to him from some natural cause such as a heart attack.

It was uncertain from the proof whether Latham was a guest of Merrill at the time of this accident, and after discussing the evidence on this point, the court say:

"Giving the plaintiff the benefit of a serious doubt, whether at the time of the accident Latham's relation to Merrill was that of a guest, we are unable to see how his death could be reasonably found to have in fact been caused by improper conduct or negligence on the part of Merrill to say nothing of the conclusion that his conduct was heedless and reckless and in disregard of Latham's rights. . . .

"The gruesome character of the death of the plaintiff's decedent naturally tended to create sympathy and a leaning toward the plaintiff's verdict, but for the reasons given we are unable to find in the evidence a sufficient basis for it, and the motion to set it aside should have been granted."

· Berman v. Berman, 110 Conn., 169, 147 A., 568, affords an illustration of heedlessness and reckless disregard of the rights of others. In this case the plaintiff was a guest riding in the rear seat of the defendant's automobile. The defendant and his fiancée were on the front seat, the fiancée driving. They were going from Hartford to New York. It was a cold, snowy day, and the road was wet and slippery. From New Haven to the point of the accident in Stratford, a distance of 15 miles, the automobile was driven at a speed of 40 miles per hour. The plaintiff requested the driver to slow down, but the driver refused his request; the plaintiff twice

requested her to stop and let him get out; these requests were refused and he was told to sit in the back seat and keep still. At the point of the accident there was a double line of trolley tracks in the street; and the road was narrowed by some barrels standing at the side of the street where it was under repair. The driver continued to drive at a speed of 40 miles per hour over the protests of the guest on a wet pavement in a falling snow; at this point she lost control of the car, which began to zigzag, almost colliding with another car, and leaving the road, striking a telephone pole with such force as to break it down, and causing the plaintiff's injury.

The court held that this was heedlessness or reckless disregard of the rights of others, which was the equivalent to wanton misconduct, as distinguished from mere negligence or carelessness.

And in Meyer v. Hart, 110 Conn., 244, 247, 147 A., 678, the court held that willful or wanton misconduct was the equivalent of criminal negligence.

█ It will be seen from these cases that momentary thoughtlessness, inadvertence, or error of judgment does not constitute heedlessness or reckless disregard of the rights of others, within the meaning of this statute; there must be something in the nature of a continued or persistent course of action over the protest of the guest.

As already stated, the Texas statute is taken from the Connecticut statute; there are as yet no reported cases construing the Texas statute; but the courts in Indiana and Iowa, which have the same wording in their statutes, quote at length from and adopt the construction of the Connecticut court: Coconower v. Stoddard (Ind. App.), 182 N. E., 466, 469; Kaplan v. Kaplan, 213 Iowa, 646, 239 N. W., 682, 684; Siesseger v. Puth, 213 Iowa, 164, 239 N. W., 46, 54; Shenkle v. Mains (Iowa), 247 N. W., 635.

Illinois and South Carolina have practically the same provisions in their statutes, but we find no reported decisions construing the statute in those states.

In all, there are fifteen states which have adopted guest statutes limiting the liability of the host to cases in which the accident was caused by the intoxication, gross negligence, willful misconduct, or reckless operation of the car, by the owner or his driver. The several statutes vary in their provisions. We do not deem it expedient here to discuss the numerous cases under these several statutes, further than to say that since the adoption of the statutes the guests have uniformly been required to show the character of negligence specified in the statutes, to entitle them to recover; and most of the cases refer to the Connecticut statute and the decisions of the Connecticut court.

No guest statutes have been passed in Massachusetts, New Jersey, Virginia, Washington, or Wisconsin, but the courts in those states

hold the owner liable only for gross negligence. McKenna v. Smith, 275 Mass., 149, 175 N. E., 474; Gardner v. Renton, 269 Mass., 246, 168 N. E., 802; Hennig v. Booth, 132 A., 294, 4 N. J. Misc., 150; Faggioni v. Weiss, 99 N. J. Law, 157, 122 A., 840; Young v. Dyer (Va.), 170 S. E., 737; White v. Gregory (Va.), 170 S. E., 739; Blood v. Austin, 149 Wash., 41, 270 P., 103; Warren v. Bowdish, 166 Wash., 217, 6 P. (2d), 593; Craig v. McAtee, 160 Wash., 337, 295 P., 146; Grandhagen v. Grandhagen, 199 Wis., 315, 225 N. W., 935.

The evidence in the case at bar stated in its most favorable aspect for the plaintiff did not warrant the finding of the jury that the defendant's chauffeur was guilty of heedless and negligent disregard of the safety of the plaintiff and the other occupants of the car; it is true he was negligent in driving at a rate of speed of 50 to 55 miles per hour, and in excess of the maximum speed limit; and he made an error of judgment in thinking, until it was too late, that he could pass the car approaching from the opposite direction, on the bridge. The manner in which the accident occurred rather corroborates his statement that the approaching car was entering the bridge at about the center line, thus forcing him either to run into the side wall of the bridge or have a head-on collision.

He had been a private chauffeur for ten years; so far as shown in this record, this was his first accident. He had not been reproved for driving too fast or for exceeding the speed limit, or for any kind of carelessness since they left Memphis two days before.

We are of opinion that the trial judge should have sustained the defendant's motion for a directed verdict at the close of all the evidence; and we are therefore constrained to reverse his judgment, and grant the motion here, and dismiss both the plaintiffs' suits.

Senter and Anderson, JJ., concur.