**HENRY et ux. v. HENSON et ux.**

No. 5993.

Court of Civil Appeals of Texas. Texarkana.
July 15, 1943.

Rehearing Denied Sept. 30, 1943.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, for appellants.

Lincoln & Harris, of Texarkana, for appellees.

HALL, Justice.

This cause was instituted by appellees, L. T. Henson and wife, Mrs. Beryl Henson, against appellants, T. W. Henry and wife, Mrs. Mary Murphy Henry, for damages sustained by appellee Mrs. Henson in the wreck of appellants' automobile in which Mrs. Henson was riding. Appellees averred that both Mrs. Henry and Mrs. Henson were members of the Women's Missionary Society of the First Methodist Church of Texarkana, Texas; that appellee Mrs. Henson was president and appellant Mrs. Henry was president-elect of said Society, and as such were elected delegates to represent same at its East Texas District Meeting or Conference to be held at College Station on or about March 28, 1940; that they did attend said district meeting, traveling to and from in appellants' automobile which was driven and operated by appellant Mrs. Henry. It was alleged further that Mrs. Henry and Mrs. Henson each devoted a great deal of their time and energy to the work of the Missionary Society, and, outside of their household duties, such work constitute their principal business; that Mrs. Henson was serving her second term as president of the Society, was thoroughly familiar with its operations and possessed a wide acquaintance among the membership of the Methodist Church and its Societies throughout East Texas. This familiarity and acquaintanceship, it was alleged, was the fruition of Mrs. Henson's attendance upon the numerous other meetings of the Missionary Society and on account of which appellant Mrs. Henry "specially requested that the said Beryl Henson go with her * * * relying upon the said Beryl Henson's superior knowledge and training in helping her, the said Mrs. Mary Murphy Henry in the work * * *." Appellees averred further: " * * * that the said trip from Texarkana to College Station had for its purpose the mutual benefit of plaintiff Beryl Henson and defendant Mary Murphy Henry, and particularly the benefit of defendant Mary Murphy Henry. In this connection plaintiff would show that the principal functions of said Methodist Missionary Society is the stimulation of interest among the members of the Methodist Church in foreign missions and the encouragement among the members of said church to contribute to foreign missions. In order to effect these objects an educational program was essential. That said Women's Missionary Society is the principal agency of said church in conducting said educational program, and in the encouraging of said members to contribute to the foreign mission cause." The trip to the district meeting of the Missionary Society, it was alleged, was beneficial to both Mrs. Henson and Mrs. Henry; that Mrs. Henson during the trip and stay at College Station discussed and explained the details and workings of the Missionary Society and introduced Mrs. Henry to the higher officials and workers in said organization "who should later prove to be of value to her as worker, president, of the local missionary society." It was further alleged that the wreck of Mrs. Henry's car occurred on the return trip about one mile northeast of the city limits of Henderson, Texas, at the end of a long incline on State Highway 43, a black-topped road, at a time when said roadway was wet from a recent rain. It was further averred that appellant Mrs. Henry was negligent in the manner in which she operated her said automobile in the following particulars, each of which furnished a proximate cause of appellee's injury: (1) In operating her automobile at a dangerous and excessive rate of speed on a slippery pavement; (2) in failing to apply the brakes in an effort to stop or slow down the speed of said automobile so as to avoid a crash; (3) in failing to keep a proper lookout to prevent the automobile from skidding on the wet pavement; (4) in failing to keep said automobile under proper control; and (5) in placing her foot on the gas accelerator as the automobile was about to leave the pavement. Negligence was also charged against appellants (a) operating said automobile while it was equipped with defective steering wheel and gears, which defect was unknown to appellees; and (b) lack of inspection of said automobile. Appellees alleged, further, that the negligence charged against appellant Mrs. Henry was gross in nature and rendered her guilty of heedlessness and reckless disregard of the rights of Mrs. Henson, but if not guilty of such

degree of negligence, then she was guilty of ordinary negligence. In the alternative, appellees alleged negligence under the doctrine of res ipsa loquitur. It was alleged that Mrs. Henson's right arm was crushed, both her knees injured, injuries to her pelvis and back, and concussion of the brain, all as a direct and proximate result of Mrs. Henry's negligence, and that such injuries were permanent. For these alleged injuries damages were sought in the sum of $32,200.

Appellants answered by special exception to the effect that it appears from the face of appellees' petition that Mrs. Henson was a guest of Mrs. Henry on the occasion in question, without payment for such transportation, and that the accident in question was not intentional on the part of Mrs. Henry nor caused by her heedlessness or reckless disregard of others. Subject to said exception appellants interposed a general denial and alleged further that Mrs. Henson was a guest of Mrs. Henry on the occasion of her transportation in said automobile without payment for such transportation; that appellee Mrs. Henson's injuries were the result of an unavoidable accident; that Mrs. Henson was guilty of contributory negligence in failing to protest to Mrs. Henry, the driver of the automobile and by whom she was seated, in respect to the rate of speed at which said car was being driven; and that Mrs. Henson assumed the risk of being injured by the breaking of the steering apparatus of the automobile.

Trial was to a jury upon special issues. Appellees made motion for judgment based upon verdict of the jury, and appellants made motion for judgment non obstante veredicto. Appellees' motion was granted and judgment entered for her accordingly.

Appellants' points 1 to 8, both inclusive, have reference to their contention that appellee Mrs. Henson was, under both her pleading and proof, a guest of appellant Mrs. Henry and as such her rights are governed by Vernon's Ann.Civ.St. Article 6701b, commonly referred to as the "guest statute." In answer to special issue No. 13, the jury found that appellee Mrs. Henson at the time of the accident was not a guest of appellant Mrs. Henry. The trial judge instructed the jury in connection with this special issue "that a person being transported over the public highways of this state by the owner or operator of a motor vehicle without payment of money or other thing of value for such transportation is a guest of such owner or operator." This record reflects that both Mrs. Henson and Mrs. Henry are active members of First Methodist Church of Texarkana, Texas, and of the Women's Missionary Society of said church; that they are deeply interested and devoted to the work of the church and society. Appellee Mrs. Henson was president of the society and the inference is strong that appellant Mrs. Henry was slated to succeed her in that office. Mrs. Henry was elected a delegate by the missionary society to its district meeting or conference in College Station to be held on or about March 28, 1940. Mrs. Henson by virtue of her official position was also directed by the society to go to said conference. These two parties together with Mrs. McCormick, also a member of said missionary society but not a delegate, attended the conference of the missionary society at College Station, traveling to and from in appellants' automobile. Neither Mrs. Henson nor Mrs. McCormick paid any money to Mrs. Henry for their passage to and from College Station. They entered into no contract with Mrs. Henry by which they agreed to remunerate her for said trip. Before the parties left for the conference there was some discussion whether they would make the trip in Mrs. Henson's or Mrs. Henry's car, but Mrs. Henson's car being equipped with unsafe tires, it was agreed that the parties go in Mrs. Henry's car. The society paid for the gas and oil used on the trip and also for some of the meals of the delegates. Appellee Mrs. Henson testified:

"Q. Did Mrs. Henry urge you to go to that conference? A. She said she would love for me to go, yes, sir;

\* \* \* \* \*

"Q. Well, what did Mrs. Henry say to you in regard to why she wanted you to go? A. I think we discussed it before we went; Mrs. Henry said she would love for me to go because I knew more of the leaders in the conference than she did. \* \* \*

"Q. Was there anything said about shorthand, you taking shorthand notes? A. I believe there was; I believe Mrs. Henry said she believed that I would get it more in detail, could get more of the meeting in detail by being able to take it in shorthand, the different meetings we attended.

"Q. Was there anything said between you and Mrs. Henry as to how you would attend the different meetings down there?

A. I believe that was discussed on the way down there. Of course Mrs. McCormick and Mrs. Henry and I would go to different conference meetings that they had so we could bring more information back to our group.

"Q. Now what was the purpose of your doing that? A. To bring more information, that we each might get something different to bring back to our society.

"Q. Now did you do that when you got down there? A. Yes, we did. * * *

"Q. Now, before you left Texarkana for the meeting did you and Mrs. Henry discuss at one time the possibility of your going in your car? A. I think we did; yes, sir.

"Q. Did you invite her to go in your car? A. I don't remember whether I invited her or not, but if I should have carried my car, I am sure I did.

"Q. I didn't hear you? A. If I should have carried my car; I am sure I did. It was just understood we would all go together in whosever car we decided to go in; there wasn't any inviting to it, it was just understood.

* * * * *

"Q. In other words, the main purpose was to bring back notes on information from what you heard and learned for the benefit of the local society that sent you down there? A. That's right.

"Q. That was the main purpose of your going? A. Yes, sir.

"Q. You and Mrs. Henry didn't set out on this trip as a pleasure trip, a social lark or anything of that kind; did you? A. No, it was on business of our church.

"Q. The main purpose was to serve the church; wasn't it? A. Yes.

"Q. Bring back information for the benefit of the missionary society that you belonged to? A. Yes, sir.

"Q. Now, Mrs. Henson, when you get right down to it, you never did have any contract or trade or agreement with Mrs. Henry, if she would furnish the transportation for you to get down to that meeting and in exchange for that you would help her and introduce her to other people and instruct her in the work of the missionary society; did you? A. No, we had no contract.

"Q. You had no conversation like that? A. Yes, we did talk about it.

"Q. I mean, no agreement, that in exchange for her transporting you down to College Station and back you would do this for her? A. No.

"Q. Nothing like that? A. No.

"Q. In other words, you wouldn't have done any more or any less for her, such as instructing her, or introducing her to the high officials, committee chairman and officials of the conference if you went in your car, or if you went in her car; would you? A. No.

"Q. In other words, the matter of her transporting you down there and back without any expense to you didn't have any bearing on what you were going to do for Mrs. Henry; did it A. No."

This witness testified further that she and Mrs. Henry discussed on the way to the conference the workings of the society and "what they would do and how they would do it after they arrived at the conference." Mrs. Henry, appellant, testified when called as a witness by appellees:

"Q. You were anxious for her (Mrs. Henson) to go for the purpose of her enlightening you and keeping in touch with the work and also in regard to assisting you in meeting the people; that is correct, isn't it? A. I can't say that all that is just as it was. I don't think the question of introducing me and making me acquainted with the people was ever brought up. I don't believe it was.

"Q. You were anxious that she go along in order that she might help you? A. Naturally; because she was president of the organization."

This witness testified further that she did not know whether she discussed with Mrs. Henson the importance of their attending different group meetings of the society but "that is always done when we go away, we do that." That she and Mrs. Henson attended different groups, "so that we might get more of the work to bring back to the Auxiliary"; that they exchanged notes and information they received; that each committee group dealt with different departments of a large organization; that it was important for them to attend as many of these group meetings as possible, which they did, and exchanged ideas and information gathered from them; that "it was an unusual situation; usually we send one delegate, this one, they permitted the president to come and one other; that is why

the two of us went and we were delegates." This witness also testified that there was not "anything brought up about anything that she (Mrs. Henson) would give to me that I would accept as payment for taking her down there." There was no such trade or agreement. "Naturally, I would like to say here when we women are together and when we go we expect each of us to get all we can, and as usual our custom is that we come back and compare those things and get together and present different phases of the work; we just expect to do that." Witness stated further that this is true regardless of whose car is used in traveling.

It is the contention of appellants that the testimony is not sufficient to remove this case from the provisions of Vernon's Ann.Civ.St. Article 6701b. This Article is: "No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others." Whether Mrs. Henson was a guest of Mrs. Henry so as to make the provisions of above-quoted article applicable is a controlling question raised by appellants. It is not contended by appellees that the negligence charged against Mrs. Henry was of a higher degree than that resulting from failure to use ordinary care. Vernon's Ann.Civ.St. Article 6701b is a copy of the Connecticut guest statute. Fly v. Swink, 17 Tenn.App. 627, 69 S.W.2d 902. "It is a familiar principle of statutory construction that when a Legislature adopts a statute of another jurisdiction which has a settled construction by the courts of that jurisdiction, it will be presumed, no intention to the contrary appearing, that the Legislature intended that it should have the same construction." Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564, 567. So we may look, then, to the decisions of the Connecticut courts as well as to our own for an interpretation of our guest statute. In Russell v. Parlee, 115 Conn. 687, 163 A. 404, 406, after citing and discussing the various cases by that court arising under and construing the guest statute of that state, it is said: "It may well have appeared to the

Legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee, in an action brought by the recipient of his hospitality, which would not exist where a mutual benefit growing out of the relationship of the parties was contemplated, even though the benefit to be received was incidental, and not a technical legal benefit which the parties by their contract had bargained for as the consideration for the transportation. Bearing in mind the objects which it may be assumed were within the legislative purpose in the enactment of this legislation, we are not prepared to say that the Legislature intended to deny a right of recovery for negligence to a passenger in an automobile unless there was, by bargain between the parties, a consideration for the transportation moving to the owner or operator. The person transported is not a guest within the meaning of the statute if the transportation is for the mutual benefit of both parties, and in determining whether it was for their mutual benefit the relationship between the parties to which it was an incident may be considered. Kruy v. Smith, supra, [108 Conn. 628, 144 A. 304]. The relationship must be definite and the benefit tangible (Leete v. Griswold Post, No. 79, American Legion; supra), but it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties." In Leete v. Griswold Post, 114 Conn. 400, 158 A. 919, 922, it is held that to remove a case from the provisions of the guest statute the extent and nature of the mutual benefits and reciprocal advantages "are not unlimited but are confined to certain definite relations, such as master and servant, and to tangible benefits accruing to the transporter." See, also, Chaplowe v. Powsner, 119 Conn. 188, 175 A. 470, 95 A.L.R. 1177; Crawford v. Foster, 110 Cal. App. 81, 293 P. 841; Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N.W. 721, 82 A.L.R. 1359-1367, inc. In Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812, 814, error dismissed, it is said: "In the first place we are of opinion that the statute [Article 6701b] should not be construed in such manner that its provisions will be made to apply in every case where the passenger has not actually compensated, or agreed to compensate, the owner for his transportation," and "we do not believe that the statute was ever

intended to cover cases in which the owner and the so-called guest were engaged in a joint enterprise, or where the owner and so-called guest were making a trip for the mutual benefit of the parties." See La Sage v. Pryor, 137 Tex. 455, 154 S.W.2d 446. The El Paso Court of Civil Appeals in the case of Raub v. Rowe, 119 S.W.2d 190, 192, writ refused, quotes with approval from Rogers v. Vreeland, 16 Cal.App.2d 364, 60 P.2d 585, as follows: "Running through the decisions in this state involving the 'guest' statute is the element of material benefit to the defendant driver in the form of possible profits, where the elements of friendship and hospitality were not involved, and where the ride was taken as an integral part of a business transaction. * * * Doubtless the Legislature intended to change the rule heretofore adopted in this state, that an invited guest could recover for simple negligence, and to provide that such a person could not recover in the absence of a showing of intoxication or willful misconduct; and we are of the opinion that the section is applicable to a case such as the one now before us, where the riders, on a trip purely social, and without any commerical or business element, agreed to pay their share of the running expenses of the automobile and their share of any other expense on the trip. We do not consider such an arrangement between the riders and the driver as the giving by the former to the latter of such compensation as removes the riders from the status of 'guest' within the meaning of the act." Judge Hickman of the Commission of Appeals, in Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, cited with approval the case of Raub v. Rowe, supra.

▌ Mrs. Henry and Mrs. Henson, the record shows, were friends and co-workers in the Women's Missionary Society of the Methodist Church. It is undisputed that each gave a great deal of her time and talents to that work. They were engaged in advancing missionary work, which is a necessary function of that great religious institution, the Methodist Church. These ladies were devoting much of their time to the spiritual uplift of their community through the channel of their society. Their work was for the church, and the benefit accruing to them was the advancement of the Christian religion through their joint efforts as delegates to this conference and the Christian education there received by each of them. But we are unable to say from the facts in this record that such mutual benefit accruing to each of them, or that the benefit to be derived from the trip by Mrs. Henry, the transporter, was of such nature "as to change the status of plaintiff (appellee) from that of a guest." As said in the recent case of Franzen v. Jason, Tex.Civ.App., 166 S.W.2d 727, 728, writ refused:

"In Blashfield's Cyclopedia of Automobile Law and Practice [Perm.Ed.], in the 1942 pocket part of Vol. 4, § 2292, in construing said Article 6701b, it is said that 'the benefit accruing to or conferred upon the operator of one of the guest class must be a tangible one growing out of a definite relationship.'

"In support of that statement of the law the author has cited the case of Voelkl v. Latin, 58 Ohio App. 245, 16 N.E.2d 519, 523, wherein the Court of Appeals of Ohio said in part: 'The relationship which will give rise to the status of a "passenger" rather than a "guest" must confer a benefit upon the owner of a definite tangible nature.'"

The positive testimony of Mrs. Henson, appellee, part of which is set out above, negatives the contention that appellant furnished her transportation to and from College Station in the exchange for certain courtesies to be performed by appellee. When this record is viewed in the light most favorable to the judgment rendered, the conclusion is inescapable that appellee on the occasion of her injury was a guest of appellant, and as such her right to recover damages is ruled by provisions of Vernon's Ann.Civ.St. Article 6701b.

The record shows that this case was fully developed in the court below, and there is no necessity that the judgment be reversed and the cause remanded for another trial. The judgment is, therefore, reversed and judgment is here rendered for appellant.

JOHNSON, C. J., disqualified.