J. V. ROWAN v. LOUISE GALLAGHER ALLEN.

No. 7409. Decided January 3, 1940.
(134 S. W., 2d Series, 1022.)

*Eskridge & Groce* and *Walter Groce,* of San Antonio, for plaintiff in error.

The incidental act of plaintiff in having her daughter stay with defendants' ill child while plaintiff and defendant and his wife went to enjoy themselves at the races during the afternoon, was not such payment for plaintiff's transportation by defendant as the guest statute contemplated so as to entitle plaintiff to recover damages for injuries caused by the ordinary negligence of defendant in driving the car. McCann v. Hoffman, 9 Calif. (2d), 279, 70 Pac. (2d) 909; Elkins v. Foster, 101 S. W. (2d) 294; Crosby v. Strain, 99 S. W. (2d) 659.

*Carter & Lewis,* of San Antonio, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

For convenience Mrs. Louise Gallagher Allen will be called plaintiff and J. V. Rowan will be called defendant. Plaintiff sustained personal injuries in a collision between two automobiles on a street in San Antonio, and brought this suit against defendant for damages on account thereof. The trial resulted in a judgment in her favor, which judgment was affirmed by the Court of Civil Appeals. 113 S. W. (2d) 322.

Plaintiff, at the time of the collision, was riding in an automobile belonging to, and being operated by defendant. It appears that her suit was brought upon the theory that she was being transported for hire and that, therefore, the defendant was liable to her for damages which she sustained as a result of his failure to exercise that degree of care owing in such relationship; but that, in the event it should be found that she was a guest of defendant, and not a passenger, defendant was nevertheless liable to her on account of certain negligent acts, hereinafter to be noticed, which bring the case within the terms of our guest statute, Article 6701b, Vernon's Civil Statutes.

■ Before making a statement of the material facts we take notice of some questions of practice. Plaintiff objects to a consideration of defendant's assignments of error upon the ground that defendant did not file a motion for a new trial in the trial court. The case was tried prior to the date the opinion was released in Stillman v. Hirsch, 128 Texas 359, 99 S. W. (2d) 270, in which opinion an amendment of District and County Court Rule 71a was announced. The Court in that case recognized that conflicting lines of decision had developed with reference to the necessity of a motion for a new trial as a condition precedent to the right to assign errors on appeal. Under the one line of decisions it would seem that such motion was necessary. Under another line, of which the leading case is Phillips Petroleum Co. v. Booles, 276 S. W. 667, such motion was not required, and assignments presenting questions once ruled upon by the trial court were entitled to consideration on appeal without the necessity of again presenting such questions to the trial court in a motion for a new trial. In order to prevent manifest injustice to litigants who had relied upon the opinion in the Phillips Petroleum Co. v. Booles case, it was announced that in cases theretofore tried the liberal rule announced in that case would be applied. In the instant case

the questions presented by assignments are questions upon which the trial court was given one opportunity to rule, and the objection to a consideration of such assignments is overruled.

■ A question is raised as to the sufficiency of the proceedings with reference to the filing of a motion for judgment non obstante veredicto. We do not find it necessary to determine whether a proper motion of that nature was timely filed, for the reason that the defendant seasonably filed and presented his motion for a peremptory instruction, which motion was overruled, and the action of the court thereon properly assigned as error. That sufficiently preserved and presented the question of defendant's liability, and a motion for judgment non obstante veredicto was not necessary to have that question reviewed.

The evidence establishes the following material facts: Plaintiff, a widow, and her two children, one a daughter sixteen or seventeen years of age, and the other a son fourteen years of age, lived together as a family in the City of San Antonio. She and her children were close friends of the Rowan family and that relationship had existed for a period of about three years. Plaintiff and the Rowans frequently attended the races at Alamo Downs together, going sometimes in plaintiff's car and sometimes in the Rowan car. On the day of the accident giving rise to this law suit, the plaintiff went to the Rowan home and invited Mrs. Rowan to go with her to the races. We quote from plaintiff's own testimony as follows:

"Q. Mrs. Allen, I want you to just explain to the jury just how Mr. Rowan came to take you out on that occasion?
"A. Well, I had been in town, and on my way home, I asked Mrs. Rowan to go to the races. Mrs. Rowan had a sick child and she had not been out for some time; and she said she couldn't go because the boy didn't want her to leave him; so, I asked the boy if he would mind his mother's going if I would have my daughter come over and spend the afternoon reading to him, and so he said he would let her go if my child would go over there. And so Mr. Rowan said he would take his car and go if my daughter, when she returned from school, would go over there and spend the afternoon with the child. So, I left a note for my child to go over there after school and spend the rest of the afternoon reading to him, which she did, and Mr. Rowan took me out to the races.
"* * *
"Q. Were you talking to him in their house at the time?
"A. Oh, yes. The child was sick in bed.

"Q. And would the little boy let Mrs. Rowan go and then some arrangement like that was made?

"A. He said he would let her go if my daughter would come over and spend the afternoon reading to him; he was very fond of her, and disliked the nurse very much.

"Q. You had planned to go out in your car?

"A. Yes, I had—I had planned to have them go out with me.

"Q. What did Mr. Rowan say, Mrs. Allen?

"A. Mr. Rowan said he would come by and get me and take me out.

"Q. On what condition? °

"A. That my child was going over there. She would have to use my car to go over there to see their child.

"Q. Was that the understanding?

"A. That was the understanding, yes.

"Q. Now, state whether or not you did make that arrangement and what you did with your car?

"A. I left my car at home there for my daughter to use so that she might go over there."

While on the way to the races the Rowan car collided with another car, resulting in personal injuries to the plaintiff, and the judgment here under review was rendered in favor of plaintiff against defendant for damages on account of such injuries.

■ The evidence presents a familiar picture of a fine, friendly relationship between two families, each glad to contribute to the happiness and welfare of the other. We find in it no suggestion from which a legitimate inference could be drawn that such relationship was commercialized by the plaintiff's hiring out her daughter to the defendant in consideration of the latter's agreement to transport plaintiff to the races. Such an inference would do violence to the motives of each party. Plaintiff was not in need of a conveyance; she had her own car. According to her testimony she initiated this trip by inviting Mrs. Rowan to go with her in her car to the races. What she did was not for the purpose of earning transportation for herself, but for the neighborly purpose of enabling her friend, Mrs. Rowan, to get away from the sick room and attend the races. As was well said by the Supreme Court of Connecticut in the case of Chaplowe v. Selma Powsner, 119 Conn. 188, 175 Atl. 470, 95 A. L. R. 1177, the situation "is barren of such definite relations, contractual or otherwise, and of such tangible mutual benefits as the statute contemplates in order to remove the plaintiff from the status of a guest and the conse-

quences attaching thereto." Like conclusions have been announced in somewhat similar states of fact in the following cases: Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722, affirmed 262 N. Y. 609, 188 N. E. 86; Syverson v. Berg, 194 Wash. 86, 77 Pac. (2d) 382; McCann v. Hoffman, 9 Calif. (2d) 279, 70 Pac. (2d) 909; Flynn v. Lewis, 231 Mass. 550, 121 N. E. 493, 2 A. L. R. 896; Audia v. De Angelis, 121 Conn. 336, 185 Atl. 78.

The fact that the trip may have been for the mutual pleasure of the plaintiff and defendant, does not operate to change the status of the plaintiff from that of guest. Raub v. Rowe, 119 S. W. (2d) 190 (error refused).

Having concluded that plaintiff was a guest of defendant, and not a passenger, the question of defendant's liability must be determined under the terms of our guest statute, Vernon's Statutes, Art. 6701b, Sec. 1, reading as follows:

"No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

■■ There is no contention that the accident in this case was intentional. The question, then, is reduced to this: Does the evidence raise an issue of fact that plaintiff's injuries were caused by defendant's "heedlessness or his reckless disregard of the rights of others?" The language last above quoted conveys the same meaning as does the term gross negligence. Raub v. Rowe, supra; Napier v. Mooneyham, 94 S. W. (2d) 564 (error dismissed); Pfeiffer v. Green, 102 S. W. (2d) 1077; Glassman v. Feldman, 106 S. W. (2d) 721; Hamilton v. Perry, 109 S. W. (2d) 1142.

In Missouri Pacific Ry. Co. v. Shuford, 72 Texas 165, 10 S. W. 408, gross negligence was defined as follows:

"Gross Negligence, to be the gound for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it."

That definition has been many times quoted with approval. Texas Pacific Coal & Oil Co. v. Robertson, 125 Texas 4, 79 S. W. (2d) 830, 98 A. L. R. 262. The acts of the defendant which, it is claimed, disclose reckless disregard of the rights of plaintiff, or, stated differently, a conscious indifference to her rights or welfare, consist of, first, driving at an excessive rate of speed, and, second, driving too far to the left. The other car involved in the collision was being driven by a Mrs. Hammer, who testified, as a witness for plaintiff, that the collision occurred on Woodlawn Avenue at a time when there were no other cars in the vicinity except the two which collided. She further testified that she and her mother were out to visit a friend, Mrs. Ferguson; that she had never been to Mrs. Ferguson's home, but knew her number; that when she found the house bearing that number and had decided which driveway was Mrs. Ferguson's she turned her car slightly to the left; that she did not believe she had gotten out of the middle of the avenue; that she gave no signal of her intention to turn to the left, because she looked back and saw no car coming from that direction; that she did not see defendant's car until the instant before the collision when she heard the brakes.

The plaintiff testified as follows:

"Q. Now, just describe to the jury, Mrs. Allen, just what occurred and how the accident happened?

"A. Well, we were going west on Woodlawn, and in the ten hundred block, there was another car going east, and Mr. Rowan was going at a high rate of speed at that time, and he was driving practically on their side of the street, and this other car was going very slowly, as we were going west, and he struck it.

"Q. How fast was Mr. Rowan's car traveling—I don't mean right at the time of the impact, but, say, back a half block before that?

"A. I should judge he was going between 45 and 50 miles an hour.

"Q. Had he been making that speed the whole of the time since he left your house or where he had gone to?

"A. No, he had not, he had just shortly speeded up his car.

"Q. And your estimate of the speed then is what?

"A. Between 45 and 50 miles an hour.

"Q. Now, before the actual crash or the collision occurred, state whether or not Mr. Rowan applied the brakes on his car?

"A. Yes, he did apply the brakes on his car.

"Q. Did he apply them violently or moderately?

"A. No, he applied them very violently.

"Q. State whether or not there were any other vehicles over on his right-hand side that would prevent him from passing this other car on the right-hand side?

"A. There were no other cars parked or passing at the time, the street was clear, there was no traffic except these two cars, the car I was in and the car we struck."

Bearing in mind the relationship existing between the parties and all other surrounding circumstances, this evidence does not raise the issue that the defendant drove in reckless disregard of the rights of plaintiff or was consciously indifferent to her welfare. Hamilton v. Perry, supra. To permit findings of gross negligence to stand under these facts would be to permit a jury to treat the language of our guest statute as dead words.

This case as a whole will permit of no inference other than that these parties, as friends, attended the races together for their mutual enjoyment, the plaintiff as defendant's guest, and that the defendant on his way to the races committed acts of ordinary negligence, that is, he failed to exercise ordinary care in the manner of operating his automobile. No facts or circumstances are shown which would justify the inference that defendant's conduct was grossly negligent, and, therefore, within the terms of our guest statute, supra.

The case appears to have been fully developed. No reason is perceived, therefore, for any further proceedings therein. It is accordingly ordered that the judgments of the Court of Civil Appeals and the trial court both be reversed and that judgment be here rendered that plaintiff (defendant in error) take nothing.

Opinion adopted by the Supreme Court January 3, 1940.