Carlene BULLOCK, Individually and as
Administratrix, et al., Appellants,

v.

**ATLANTIC REFINING COMPANY,**
Appellee.

No. 5138.

Court of Civil Appeals of Texas.

El Paso.

Feb. 15, 1956.

Rehearing Denied March 28, 1956.

Archer & Overshiner, Abilene, for appellants.

James Little, Elton Gililand, Hartman Hooser, Big Spring, for appellee.

HAMILTON, Chief Justice.

This suit was originally filed by Carlene Bullock, individually and as administratrix of the estate of William Melvin Bullock, deceased, George Bullock and Melvin Ray Bullock, minors, by and through their mother, Mrs. Carlene Bullock, as next friend, W. A. (William) Bullock, individually and as next friend for Dena Lenora (Barbara) Bullock and Carl Eugene Bullock, minors, and Laura Mitchell Bullock, all heirs at law of William Melvin Bullock, deceased, and Mr. and Mrs. W. L. Auten, heirs at law of James E. Auten, deceased, plaintiffs, against R. F. Hodge and W. H. Mitchell, operating as H & M Truck Company, and Atlantic Refining Company, arising out of a certain automobile-truck accident which occurred May 22, 1953, in which William Melvin Bullock, James E. Auten and others were killed.

The cause of action as to R. F. Hodge and W. H. Mitchell was transferred on plea of privilege to Midland County, plaintiffs having agreed that the plea of privilege be sustained. The cause pro-

ceeded to trial in Martin County as to defendant Atlantic Refining Company, and at the close of all the evidence the court instructed a verdict in favor of defendant Atlantic Refining Company, from which verdict appellants have appealed to this court.

Appellants, plaintiffs below, predicate their appeal on the proposition that the court erred in rendering an instructed verdict in favor of Atlantic Refining Company when there was sufficient evidence to go to the jury that either the driver of the automobile was grossly negligent in causing the accident, or that the accident was caused intentionally by the driver of appellee's automobile.

Since the court instructed a verdict in this case, it is necessary that we review fully the facts. On May 22, 1953, about 2:30 o'clock P.M., William Bullock and James E. Auten were passengers in a certain automobile belonging to one Evans, which had become overheated and had stalled by the side of the road about 8 miles north of Midland, on State Highway No. 349, in Martin County, Texas. They were members of a five-man drilling crew which had left Odessa early in the day to report for work on a well that was being drilled some 7 miles north of where their car had stalled. One of the members, Copeland, had hitch-hiked his way back to Odessa to get his car, and the four remaining members were waiting for him when a Mr. Zepfel, an employee of Atlantic Refining Company, who was traveling south on said highway, stopped and asked the members of the crew if there was anything he could do for them. They told him yes, that their car was stalled, and that they were late for work and would like for him to take them to the rig. He told them that he would, and three members of the crew, Auten, Bullock, and Frank Bigham, got into the car with Zepfel. Evans, being the owner of the stalled car, remained with his car to wait for Copeland. Evans nor any of the members of the crew knew who Zepfel was, and did not know he was working for the Atlantic Refining Company. At the time that Zepfel stopped, his car,

which was a Plymouth, appeared to be hot, as the radiator was boiling over. It was testified later that the temperature on that afternoon was 106°. Evans testified that as Zepfel drove off with the men there was nothing unusual in the manner of his driving, and that he watched them until they got out of sight over a rise. It appears that the collision in question happened about two miles farther north on the highway from where Zepfel picked up the members of the drilling crew.

Virgil Sneed, the driver of an H & M Trucking Company truck, testified that he was driving a two-ton Chevrolet truck, to which was attached a single action float, or semi-trailer, and was traveling south at about 40 or 45 miles an hour when he noticed appellee's Plymouth automobile about half a mile ahead of him; that he noticed nothing unusual about the automobile then; that when the car was about 300 yards from him he noticed said automobile moving over from right on the center line, and continue to ride the center line, but still on his half of the road, at which time there was nothing unusual about it, and that when they were 60 or 70 feet apart the Plymouth suddenly swerved over to the left, right in front of him, and that he, Sneed, headed for the bar ditch on his right-hand side, applying his brakes. He testified that his right front wheel was about 3 feet off the pavement at the time of the impact. He could not and did not estimate the speed at which the Plymouth was traveling. It appeared that all of the occupants of the Plymouth automobile were killed, either instantly, or died before regaining consciousness. After the impact the Plymouth automobile came to rest about 66 feet south and west of the point of impact, and the trailer truck came to rest upside down on the Plymouth. The Chevrolet truck came to rest about 48 feet west and either 2 feet south or 2 feet north of the point of impact. There are a number of pictures in the record showing the marks left at the scene of the accident. The tire marks of both the truck and the Plymouth are plainly visible. Both the right tire marks and the left tire marks of the truck appear

to start at the center line of the highway, indicating that the truck came from the east side of the highway immediately before the collision. These truck tire marks measure from the center line of the highway to the point of impact 66 feet. The length of the tire marks of the Plymouth, which also show from the center line to the point of impact, was not testified to. However, they appear to be about the same length. From the marks left on the pavement it was testified that the point of impact of the two automobiles was about 3 feet 5 inches from the west edge of the pavement. A Mr. Renfrow, a Highway Patrolman, who arrived at the scene a few minutes after the accident, testified that the tire marks left by the Plymouth were swerve marks, and that the tire marks left by the truck were caused by the application of the brakes. Renfrow testified that from the facts as he found them on the scene, that is, the tire marks of the two vehicles at the point of impact, where the vehicles came to rest, and the fact that the truck was not going over 45 miles an hour, he could not testify as to the speed of the Plymouth just prior to the impact, but that considering two other facts, that is, that the radiator of the Plymouth was boiling over at the time it stopped 2 miles south of the collision, and considering the fact that the men were late for work, he would testify that the Plymouth automobile was going about 70 or 75 miles an hour at the time of the collision.

We will first dispose of appellants' contention that the collision was caused intentionally by the driver of appellee's automobile. We find no allegation in plaintiffs' petition that appellee's driver intentionally caused the accident, neither do we find any evidence that would substantiate such pleading, if there had been. We therefore overrule this contention.

▉▉▉▉ We also overrule appellants' contention that the driver of appellee's automobile was grossly negligent in having the accident in question. It was stipulated by the appellants and appellee that the occupants of the car at the time of the accident were guests, consequently it is necessary for the appellants to show proof of facts which would constitute gross negligence on the part of appellee before appellants could recover. Appellants rely principally on the case of Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 195. We will not review the facts in that case, but suffice it to say that the court found some evidence that there was a continued and persistent course of conduct on the part of the driver of the automobile, with realization of the danger involved, sufficient to raise a jury issue of a conscious indifference to the rights of his guests. The highway was straight and comparatively level, there was little traffic. There is no probative evidence of excessive speed. The testimony of the highway patrolman that the Plymouth was going 70 to 75 miles an hour is of no probative force. In order to arrive at such conclusion he had to presume first that since the radiator of the Plymouth was boiling over at the time he stopped and picked up the members of the drilling crew, that the driver had previously been traveling at excessive speed, further he had to presume that since he had previously traveled such a speed that he must have been traveling at an excessive speed just before the collision. It is just as reasonable to presume that the radiator was boiling over because of the excessive heat of the day, rather than excessive speed, and to presume that if the radiator was boiling over that the driver would probably drive slower, rather than faster. At any rate, a presumption upon presumption is not countenanced in our law. The fallacy of the witness' presumption, taken with the other facts, in that because the crew was late to work the Plymouth was traveling 70 or 75 miles an hour is so apparent that it need not be discussed. Furthermore, we hold that a speed of 70 to 75 miles an hour on a straight, level highway where traffic is sparse is not in and of itself sufficient to constitute gross negligence. The sudden swerving of the Plymouth automobile to the left in and of itself was not sufficient to show a conscious disregard of the rights of others, as was found in the Lochausen case, supra. Zep-

fel, who was driving his car properly up to the time of the sudden swerving to the left, showed nothing but concern for his guests. This was a very hot day, these men were having car trouble, he stopped and asked if he could do anything for the occupants of the stalled car, and when told what they needed, he graciously invited them into his car and turned around and started to take them to their work. As far as the evidence shows he never knew or had heard of any of the parties theretofore. It was nothing more than the prevalent and widespread and well-known hospitality and comradeship existing between oilfield workers of west Texas. The burden is on the plaintiff to prove gross negligence—it certainly cannot be presumed. While it is hard to explain why the sudden swerving to the left of the Plymouth automobile, when you take into consideration the testimony of Sneed, the driver of the truck, that he was about the middle of his side of the pavement; but if on the other hand you take into consideration all the implications derived from the facts and evidence left on the pavement, the tire marks of the two vehicles, it might be explained that the driver of the Plymouth made the sudden swerve to the left in an attempt to avoid a collision, rather than to cause one.

The judgment of the trial court is affirmed.

FRASER, Justice (concurring).

I concur because the sum total of all the probative evidence in this case shows at most a sudden swerving of the Plymouth automobile. There is no living person to explain it. It was stipulated that the three passengers were guests. Under such stipulation, liability of defendant had to be predicated on gross negligence, which requires a finding that the driver had a conscious disregard of the safety of the passengers. Again, it must be remembered there were no survivors of that car, and the driver of the truck said only that the Plymouth car suddenly swerved. This could have been attributed to many things, such as a heart attack, bee sting, or even carelessness, but gross negligence must be affirmatively established, not guessed at. This situation is significantly lacking in the elements found in many cases involving the guest statute where gross negligence was established, such as cautioning and entreaty by passengers to driver, high speed coupled with known mechanical defects, angry and reckless state of mind, etc. The ruling of the trial court was therefore entirely correct.