Sims W. DUREN, Sr., Appellant,

v.

**U. S. FIRE INSURANCE COMPANY,**
**Appellee.**

No. 1244.

Court of Civil Appeals of Texas,
Tyler.

Feb. 22, 1979.

Jerry B. Donaldson, Gatesville, for appellant.

Paul H. Hubbard, Naman, Howell, Smith, Lee & Muldrow, Waco, for appellee.

MOORE, Justice.

Appellant, Sims W. Duren, Sr., instituted suit against U. S. Fire Insurance Company, seeking to recover, among other things the proceeds of a $9,000.00 fire insurance policy covering a house situated in Killeen, Texas. He alleged that he purchased the house and lot from Doris Moody after it had been damaged by fire and was entitled to the proceeds of the policy. Alternatively plaintiff sought cancellation of the first lien [1] held by U. S. Fire. Further, pleading in the alternative, appellant sought to recover the value of the repairs made on the house. Ancillary to his main suit, appellant also sought injunctive relief to restrain appellee from selling the property by a trustee's sale.

Appellee, U. S. Fire Insurance Company, answered with a general denial and by way of a defense affirmatively alleged that the fire insurance policy in question was issued only to Orville J. Moody; that thereafter Moody conveyed the property to Doris Moody, his ex-wife, without giving the company notice of the change in ownership in violation of the terms of the policy; that the property was subsequently destroyed by fire, and that at the time of the fire, the company had no notice of the change in ownership and had never consented to accept Doris Moody as its insured. The company alleged that because of the change in ownership from Orville to Doris Moody without its consent, it was no longer obligated on the policy and therefore was not liable to the appellant who claimed as an assignee under Doris Moody. The insurance company also filed a third party cross-action against Orville Moody, Doris Moody, and Sims W. Duren, Sr., alleging that it had theretofore paid in excess of $8,000.00 to the loss-payee named in the policy, Killeen Savings and Loan Association, the holder of the first deed of trust lien on the property. The company alleged that because of such payment, it became subrogated to the rights of the Killeen Savings and Loan

Association on the promissory note and deed of trust lien which it received by assignment from Killeen Savings and Loan Association. The company further alleged that the note had not been paid and that the maker, Orville J. Moody, was in default. The insurance company prayed for a recovery on the note and for a judicial foreclosure of the deed of trust lien.

Trial was before a jury. Upon motion by the insurance company, the trial court disregarded certain jury findings and rendered judgment in favor of appellee, U. S. Fire Insurance Company, decreeing that appellant, Sims W. Duren, Sr., take nothing by his suit. The trial court also rendered judgment in favor of the insurance company against Orville J. Moody in the amount of $11,109.93 on the promissory note, together with interest and attorney's fees in the amount of $880.00 and ordered a foreclosure of the lien and sale of the property in question. It was further ordered that the appellant Sims W. Duren, Sr., was to receive any amount which the property brought at the execution sale over and above the amount of the judgment. Appellee, Sims W. Duren, Sr., perfected this appeal. Neither Orville J. Moody nor Doris Moody appealed and the judgment became final as to them.

We affirm.

The controversy arose in this manner. On October 4, 1971, Orville Moody and wife, Doris Moody, purchased the house and lot in question making a down payment with community funds. Orville Moody executed a promissory note payable to Killeen Savings and Loan Association in the amount of $8,800.00 and executed a deed of trust and deed of trust lien to secure the payment of the note. Simultaneously with the purchase of the house and lot, a Texas standard form fire insurance policy was issued by appellee, U. S. Fire Insurance Company, naming Orville Moody as the insured and Killeen Savings and Loan Association as the loss-payable payee. The policy provided as follows:

1. After the fire, the insurance company paid the mortgagee, Killeen Savings and Loan Association, the balance due and owing on the property, and took an assignment of the note and deed of trust lien thereon.

"Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring following a change in ownership of the insured property."

At the time the house was purchased, Doris and Orville Moody were separated and at no time did he ever live in the house. On January 10, 1972, Doris and Orville Moody were divorced. The divorce decree shows that the court divided the various items of community property between the parties. The judgment in the divorce suit recites that the house and lot in question was awarded to Orville Moody as his separate property and that he was to assume and pay in full any community indebtedness existing thereon. After the divorce Doris continued to live in the house along with the parties' minor child and Orville continued making the monthly payments thereon. On October 1, 1973, almost two years after the divorce, Orville conveyed the property to Doris by warranty deed. Under the terms of the deed, Doris agreed to assume and pay in full the unpaid balance due on the deed of trust note held by Killeen Savings and Loan Association.

There is nothing in the record indicating that either Orville or Doris Moody notified the insurance company of the change of ownership. The policy contains no endorsement in favor of anyone except Orville Moody.

On March 10, 1974, the house was severely damaged by fire while being occupied by Doris Moody. Shortly after the fire, appellant, Duren, purchased the property from Doris Moody. The conveyance was made by a warranty deed together with an assignment of all of her right, title and interest to the fire insurance policy, including any claims she might have had for fire loss as a result of the fire. Thereafter, appellant made improvements on the house and made a claim for the proceeds of the policy. The company denied liability. After U. S. Fire posted notice to foreclose its lien on the property, appellee instituted the present suit.

Appellant, Duren, attacks the judgment by ten points of error. The threshold question to be determined is whether the policy became ineffective and void because of a violation of the change of ownership provisions of the policy.

Under the first and second points of error, appellant contends that the trial court erred in disregarding the jury's findings and entering a judgment in favor of the appellee. He argues that he was entitled to a judgment for the proceeds of the policy based on the jury's findings that (1) the risk to the insurance company was not substantially increased at any time between the inception of the insurance coverage and the date of the loss; (2) no change of ownership actually occurred because Orville Moody bought the property for his use and benefit and he continuously owned equitable title through a resulting trust; (3) the insurance company knew or should have known of the change in ownership to Doris Moody and therefore the change in ownership provision of the policy was waived; and (4) the appellant was misled by the insurance company prior to the time he purchased the property and as a result the company was estopped to deny liability on the policy, or in the alternative was estopped to deny liability for the improvements made by him. Each contention will hereinafter be discussed in that order.

To sustain the action of the trial court in granting a motion to disregard the jury's answers to special issues, it must be determined that there is no evidence upon which the jury could have made the findings relied on. In acting on the motion, all testimony must be considered in a light most favorable to the parties against whom the motion is sought and every reasonable intendment deductible from the evidence is to be indulged in that party's favor. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 777–78 (Tex.1974).

Notwithstanding the foregoing rule, however, the trial court is authorized to disregard the jury's answer to special issues where the finding made by the jury is im-

material or has no support in the evidence. Rule 301, Tex.R.Civ.P.; *Eubanks v. Winn*, 420 S.W.2d 698 (Tex.1967); *Izaks v. National Bank of Commerce*, 547 S.W.2d 345, 349 (Tex.Civ.App.-Tyler 1977, no writ history); *City of San Augustine v. Roy W. Green Co.*, 548 S.W.2d 467, 472 (Tex.Civ.App.-Tyler 1977, writ ref'd n. r. e.).

First, appellant argues even though there was a violation of the change of ownership clause, he was entitled to a judgment for the proceeds of the policy because the jury found the risk was not substantially increased. In response to Special Issue No. 8, the jury found that the risk to U. S. Fire Insurance Company was not substantially increased at any time from the inception of the policy to the date of the fire. Appellant argues that since there was some evidence that the risk was not substantially increased, the trial court erred in disregarding this finding. We find no merit in this contention.

■ "The validity of a provision of an insurance policy declaring the policy void in case of any change of interest, title, or possession is not open to question." 32 Tex. Jur.2d Insurance sec. 268, p. 447. Texas courts recognize that a contract provision which voids the coverage in the event of a change of ownership is a valid and enforceable one, and relieves the insurance company of liability if a change of ownership occurs. *Bucher v. Employers Casualty Company*, 409 S.W.2d 583, 586 (Tex.Civ. App.-Fort Worth 1966, no writ history) citing cases.

■■ Where there has been a change of ownership without notice to the insurance company and without an endorsement to that effect on the policy, a violation of the policy provisions occurs, and a party who is a complete stranger to the contract is not in a legal position to recover any interest in the policy proceeds. The contractual agreement between the insurer and the insured, embodied in the policy, is not an insurance of property without regard to the ownership. Rather it is an agreement of indemnity against such loss or damage as the insured owner might sustain by reason of his ownership of the property covered by the policy. Under the terms of the policy, coverage does not depend on whether or not the change of ownership increases the insurance hazard. The question of whether or not the hazard was increased is immaterial. The policy provision provided that upon the failure of the insured to comply with its obligations, the company would not be liable. That provision was not complied with and therefore the appellant has no interest in the policy proceeds by way of the assignment or by way of the conveyance from Doris Moody. *Rio Grande Nat. Life Ins. Co. v. Hardware Dealers Mut. F. Ins. Co.*, 209 S.W.2d 654, 657 (Tex.Civ.App.-Amarillo 1948, writ ref'd n. r. e.); *Bucher v. Employers Casualty Co.*, supra; *Home Insurance Company v. Brownlee*, 480 S.W.2d 491 (Tex.Civ.App.-Eastland 1972, no writ history); 32 Tex.Jur.2d Insurance secs. 268, 269, pp. 447–53; also see *New Amsterdam Casualty Co. v. Hamblen*, 144 Tex. 306, 190 S.W.2d 56 (1945). Since the question of whether or not the hazard was increased is immaterial, it follows that the trial court did not err in disregarding the jury's finding to Special Issue No. 8.

■ Next, appellant argues that the evidence shows that no change in ownership actually occurred. In support of this proposition appellant relies on the jury's findings to Special Issue No. 5 wherein the jury found that the house and lot in question was purchased by Orville Moody for the use and benefit of Doris Moody and on Special Issue No. 6 wherein the jury found that Orville Moody continued to hold title to the property for the use and benefit of Doris Moody until October 2, 1973 (the day after he conveyed her the legal title). He argues that under these findings the equitable title remained in Doris Moody at all times after the property was purchased because Orville Moody purchased it for her use and benefit. Based on this premise appellant contends that a resulting trust was created, thereby giving her continuous ownership of the equitable title and therefore there was no violation of the change in ownership clause.

It would serve no useful purpose to delineate the facts and circumstances relied on by appellant as establishing a resulting trust since such facts and circumstances transpired prior to the time Orville Moody was awarded the full legal and equitable title to the house and lot in the divorce decree dated October 1, 1973. Suffice it to say that we do not believe that the facts and circumstances relied on by appellant were sufficient to create a resulting trust. But even so, we hold that it terminated when Orville Moody was awarded the complete and unrestricted title to the property in the divorce decree. The complete legal and equitable title vested in Orville Moody and Doris no longer had any interest therein. At the time he conveyed the property to her, she was a complete stranger to the title. Thus, the conveyance from Orville to Doris Moody operated as a complete change of ownership.

Special Issues Nos. 5 and 6 and the jury's findings thereon relate to facts relied on as creating a resulting trust prior to the divorce decree. In view of the subsequent divorce decree awarding the complete title to Orville Moody, these findings are immaterial. It follows that the trial court was authorized to disregard such findings and committed no error in refusing to enter judgment for appellant on the theory that there had been no change in ownership because Doris Moody's ownership continued under a resulting trust.

■ Nor can we agree with the appellant's contention that no breach of the change of ownership occurred because of the jury's finding in response to Special Issue No. 7 that the company or its agents knew or should have known, prior to the fire, that the property in question had been transferred from Orville to Doris Moody. Essentially, appellant's argument here is that upon proof of actual or constructive knowledge of change in ownership, the company must be held to have waived its right to rely upon the change of ownership provisions of the policy. Therefore appellant contends that the trial court erred in refusing to render judgment awarding him

the proceeds of the policy. We find no merit in this contention.

The only evidence relied on by appellant in support of the above finding consists of the following notations found on the face of the insurance policy, to-wit: "Doris Moody transferred 10/2/73" and "notified FW and Company and Doris Moody." According to the testimony of the employees of the Killeen Insurance Agency, the foregoing notations were made on the policy on March 18, 1974, *after* they learned of the fire and discovered that there had been a change in ownership. They explained that the notation "notify FW and Company" meant that Floyd West & Company, the insurance company's claims adjuster, had been notified of the change in ownership. They testified unequivocally that they had no knowledge whatever of the transfer of ownership from Orville to Doris Moody prior to the time of the fire. There is no evidence to the contrary.

In our view the foregoing testimony is not of sufficient probative force to establish that the agents of the insurance company had actual or constructive knowledge of the change in ownership prior to the time of the fire. Moreover, even if it were conceded that they had knowledge of the change in ownership, there is no evidence that they did or said anything indicating that they approved of the change and accepted Doris Moody as their insured.

■ "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intention to rely upon such right." *Maryland Casualty Company v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex.1966), citing *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855 (1958).

In our view, the evidence is not of sufficient probative force to support the finding of actual or constructive knowledge on the part of the appellee. But even so, this finding, standing alone, falls short of establishing a waiver of the policy provisions in question because there is no evidence and no finding that the company or its agents consented or acquiesced in the change of

ownership. In the absence of such a finding there can be no waiver. Thus the finding on this issue is meaningless and immaterial. It follows that the court was authorized to disregard the finding and therefore did not err in refusing to render judgment for appellant based on a waiver of the change of ownership clause.

Finally, appellant contends that appellee should be estopped from denying liability for the improvements made to the property after its purchase from Doris Moody. The basis of his claim of equitable estoppel is that the company's agents represented to him that the insurance claim would be paid, and that in reliance thereon he purchased and improved the property to his detriment. In this connection the jury found that: (1) the agent of U. S. Fire represented to appellant's attorney that the fire claim in question would be paid; (2) that but for such representation appellant would not have purchased and improved the property; but (3) the appellant failed to establish by a preponderance of the evidence that the representation was false.

The following elements must be proved in order to establish an estoppel: that the party to be estopped made (1) a false representation or concealment of material facts, (2) with actual or constructive knowledge of the facts, (3) to a party without knowledge or the means of obtaining knowledge of the real facts, (4) with the intention that it be acted on, (5) which was relied on or acted on by the party to whom it was made to his detriment. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); *Concord Oil Co. v. Alco Oil and Gas Corp.*, 387 S.W.2d 635 (Tex.1965); *Lunsford v. Sage, Inc. of Dallas*, 438 S.W.2d 615 (Tex. Civ.App.-Houston [1st Dist.] 1969, writ ref'd n. r. e.). The burden of proving the essential elements of estoppel is on the party asserting it. *Concord Oil Co. v. Alco Oil and Gas Corp.*, supra at 639. Failure to prove one of the essential elements is fatal. *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968).

In view of the fact that appellant failed to obtain a finding that the alleged representation was false, appellant failed to discharge his burden of proof on the issue of estoppel. Accordingly, appellant's first and second points are overruled.

All remaining points briefed by appellant have been considered and found to be without merit and are overruled.

The judgment of the trial court is affirmed.